# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | CASE NO. 4:09-CR-201 |
| | § | Judge Folsom |
| TOBORRANCE DEYOUN MURPHY | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court is Defendant's Motion to Suppress Evidence and Statements (Dkt. #21). Having considered the relevant pleadings, and argument and testimony given at the June 30, 2010 hearing, the Court is of the opinion that Defendant's motion should be denied.

## BACKGROUND

Defendant is charged with Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c) and two counts of Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1). Defendant seeks to suppress all evidence and statements connected to the stop of Defendant's vehicle on or about November 7, 2008.

*Trooper James Blount*

The Government offered the testimony of Department of Public Safety Trooper James Blount ("Blount"). On or about November 7, 2008, Blount was working as a highway patrolman on US-271 near Deport, Texas, between Paris, Texas, to the west and Bogata, Texas, to the east. Blount observed a white 1996 Cadillac traveling south on US-271. Blount's vehicle was sitting in the shoulder waiting to merge into traffic after a stop of another vehicle. The Cadillac passed Blount on his driver's side. Blount observed that the window tint on the passenger side front window of the Cadillac was very dark and decided to pull over the Cadillac to determine whether the tint was

illegal.

Blount turned on his vehicle lights and pulled over the Cadillac. Before Blount approached the Cadillac, he observed Defendant, the passenger, making furtive movements. Blount believed that Defendant may have been attempting to hide something because he bent forward toward the bottom of the passenger seat. Blount approached the vehicle from the passenger side in order to avoid oncoming traffic. As he approached the vehicle, Defendant was bent forward with his hands toward the bottom of his seat. Blount instructed Defendant to sit up straight and keep his hands where he could see them. Defendant complied. Blount considered these movements to be unusual for a person pulled over for a traffic violation and were indicative of trying to hide something. When Defendant sat up straight, Blount noticed that there was a bulge in the crotch area of Defendant's pants. Blount believed Defendant might be attempting to hide something in his pants. Blount explained to the driver and to Defendant why he pulled the vehicle over and proceeded to use a "tint meter" to check the legality of the tint. Texas law allows a minimum limit for window tint of 25%. The tint on the passenger-side window was 6%, which is darker than the legal limit.[1]

Blount informed the driver that he would be given a citation for illegal window tint and asked the driver for his driver's license and insurance information. The driver told Blount that he did not have a driver's license, but had a Texas identification card. The passenger already had his license out, which seemed strange to Blount. Blount noticed that Defendant seemed very nervous, while the driver did not. Blount asked the driver to step to the rear of the vehicle to discuss why he was driving without a license. The driver complied and left the vehicle.

---

[1] According to Blount's testimony, the tint on the Cadillac was a "reducing tint." Reducing tint must allow light transmission of 25% or greater to comply with Texas law.

Blount asked the driver to face him, with the driver's back to Defendant. The driver stated that he and Defendant were coming from Paris, Texas, where they were visiting friends for four or five days. The driver told Blount that they had luggage in the trunk of the car. The driver consented to a search of his person and Blount found no contraband. Blount informed the driver that he was going to issue him a citation for driving without a license. Blount did not plan to issue a citation for the window tint but rather to just give a warning. Blount told the driver that if Defendant's license checked out, he would allow them to swap drivers and go on their way.

Blount returned to the vehicle and asked Defendant for his license. Defendant had his left hand in his pocket and was slumped over. Blount instructed Defendant to remove his hand from his pocket and to sit up straight. Blount noted that Defendant appeared increasingly nervous. Defendant told Blount that he and the driver had visited friends in Paris, Texas, for about a week. Defendant told Blount that they purchased clothing in Paris and that it was in the trunk of the car. Blount felt this was unusual.

Blount returned to his vehicle to check Defendant's license information. Blount called for backup because he felt that something was not right with Defendant's behavior. He felt that backup might be needed. Blount learned that his closest backup was fifteen to thirty minutes away. While Blount checked the license information, he noticed that Defendant had both of his hands out the window of the Cadillac. This seemed very strange to Blount and made him even more suspicious of Defendant. According to a computer report, Defendant's license was suspended for driving without insurance. Blount decided to look up the driver's information provided on the identification card to make sure that he did not have a valid driver's license. In the past, Blount had experienced people that believed their license was not valid when they actually did have a valid driver's license.

3

Therefore, he wanted to double check the driver's identification card before telling the driver and Defendant that neither one could legally drive the vehicle. Running an identification card through the computer system takes longer than running a driver's license. While using the computer, Blount continued to watch Defendant. Defendant slumped forward in his seat while continuing to hold his hands outside the window of the vehicle. Blount had never witnessed a person at a traffic stop holding their hands out of the window of a vehicle.

Blount returned to the vehicle to discuss Defendant's suspended license. As he approached the vehicle, Defendant put his hands back inside the window. Defendant again slumped forward and appeared very nervous with labored breathing. Blount instructed Defendant to sit up straight. Blount did not want to ask Defendant to get out of the vehicle unless he had backup. However, Defendant's behavior did nothing to ease Blount's suspicions of Defendant. In Blount's experience, people usually get less nervous during the duration of a traffic stop, but Defendant kept getting more nervous. The driver of the vehicle appeared relaxed throughout the entire stop. Blount decided to ask Defendant to exit the vehicle because he had concerns as to why Defendant would not cooperate by sitting up straight and keeping his hands in sight.

When Defendant exited the vehicle, Blount again noticed the bulge in Defendant's pants. Defendant stood very close to Blount, which made Blount uncomfortable. Defendant attempted to "blade off" or stand next to Blount. In Blount's experience, a person will stand sideways and next to him in order to conceal something. Blount noted that Defendant continued to try to "blade off," was breathing rapidly, his hands were shaking, and the carotid artery was bulging in his neck. Defendant appeared to be getting increasingly nervous and began giving rapid explanations for the suspension of his driver's license. At this time, Blount's suspicion that Defendant was concealing

4

something was peaked. Blount asked Defendant if he was carrying any contraband on his person. Defendant said that he was carrying no contraband and then placed his hands in his pockets. Blount told Defendant to not put his hands in his pockets and asked Defendant for consent to search Defendant. Defendant consented.

Blount searched Defendant from the right side to the left side. Blount felt a hard metal object in the shape of a gun on the left side of Defendant's waistband. Blount ordered Defendant and the driver to the ground. Blount asked Defendant if he had a gun and Defendant replied yes. Blount handcuffed Defendant and then removed the gun. The gun was contained inside a purple Crown Royal bag attached to Defendant's waistband. The gun was loaded. Blount also found a large yellow plastic bag containing what Blount believed to be marijuana and four pink pills believed to be ecstasy. Blount placed Defendant under arrest.

## ANALYSIS

Defendant argues that all evidence and statements connected to Defendant's arrest should be suppressed based on the following arguments: (1) No probable cause existed for the initial stop of the vehicle; (2) The stop of the vehicle was merely a pretext to allow the law enforcement officials to conduct a search of the vehicle, the questioning of the defendant was totally outside the scope of the traffic stop, and no reasonable suspicion existed beyond that which led to the initial stop; (3) If, in the alternative, Defendant was initially legally stopped and detained, once the check of the driver's licenses and insurance was completed, the detention became unreasonable and the subsequent search of Defendant's person was the result of an illegal detention.

The Government responds that the initial stop of the vehicle was justified because Blount had a reasonable suspicion that the window tint violated the Texas Transportation Code. Also, the

Government argues that Defendant's actions during the stop gave Blount reason to believe that Defendant was or was about to be engaged in criminal activity. Further, the Government argues that there was not a prolonged detention because the stop and detention lasted no longer than necessary for Blount to investigate his reasonable suspicion and neither Defendant nor the driver could lawfully drive the vehicle without a valid driver's license.

The legality of traffic stops are analyzed for Fourth Amendment purposes under the standard articulated in *Terry v. Ohio*, 392 U.S. 1 (1968). "This standard is a two-tiered reasonable suspicion inquiry: (1) whether the officer's action was justified at its inception, and (2) whether the search or seizure was reasonably related in scope to the circumstances that justified the stop in the first place." *United States v. Valadez*, 267 F.3d 395, 398 (5th Cir. 2001) (citing *Terry*, 392 U.S. at 19-20). "In addition, 'the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time.'" *Id*. (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)). "However, once an officer's suspicions have been verified or dispelled, the detention must end unless there is additional articulable, reasonable suspicion." *Id*. "'At that point, continuation of the detention is no longer supported by the facts that justified its initiation.'" *Id*. (quoting *United States v. Shabazz*, 993 F.2d 431, 436 (5th Cir. 1993)).

In the opinion of the Court, the initial stop of the vehicle was proper. "[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *United States v. Stevenson*, 97 F. App'x 468, 469 (5th Cir. 2004)(citing *Whren v. United States*, 517 U.S. 806, 810 (1996)). Blount testified that he believed the window tint of the vehicle was illegally dark and in violation of Texas law. "As excessive window tint is a violation of Texas Transportation Code § 547.613, and [the windows of the vehicle] were darker than legally

permissible, the stop was supported by probable cause." *Id*. Defendant cites the Court to *United States v. Guerrero-Barajas*, 240 F.3d 428 (5th Cir. 2001), for the proposition that "[t]inted or heavily tinted windows on a vehicle do not alone rise to the level of reasonable suspicion for an investigative stop of that vehicle." *Guerrero-Barajas*, 240 F.3d at 433. However, the Fifth Circuit addressed the exact same argument in *Stevenson*, stating that despite the *Guerrero-Barajas* holding, "[t]here is no merit to Stevenson's argument that Fifth Circuit precedent precludes an officer from using suspicion of illegal window tint as a basis for reasonable suspicion or probable cause for a traffic stop."[2] *Stevenson*, 97 F. App'x at 469. Therefore, the initial stop of the vehicle was proper and did not violate the Fourth Amendment.

Blount's detention and questioning of Defendant in order to check the driver and Defendant's identification and trip itinerary were also proper. "An officer may examine driver's licenses and vehicle registrations and run computer checks as part of his investigation of the circumstances that originally caused the stop."[3] *United States v. Pack*, 612 F.3d 341, 350 (5th Cir. 2010) (citing *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004)). "He may also ask about the purpose and itinerary of the occupants' trip as part of this investigation, because we consider these questions to be reasonably related in scope to his investigation of the circumstances that caused the stop." *Id*. "Additionally, we have held that an officer may ask questions on subjects unrelated to the circumstances that caused the stop, so long as these unrelated questions do not extend the duration

---

[2] *Guerrero-Barajas* concerned the investigation of human smuggling by Border Patrol agents. The Fifth Circuit's opinion in that case likely only applies to that specific context, as Border Patrol agents are not normally authorized to enforce traffic violations, such as illegal window tinting.

[3] It is permissible to ask a passenger, like Defendant, to identify himself and run computer checks on his driver's license and background. *Pack*, 612 F.3d at 351.

7

of the stop." *Id*. (citing *Shabazz*, 993 F.2d at 436-37).

Therefore, the only question remaining is whether or not Blount had reasonable suspicion that Defendant was engaged in criminal activity before Blount's routine computer checks were completed. *See Id*. at 352. The Court concludes that Blount did have reasonable suspicion before the initial purpose of the traffic stop was complete.[4] The Fifth Circuit recently stated the following:

> [W]e do not find that a detention during a valid traffic stop violates the detainee's Fourth Amendment rights where it exceeds the amount of time needed to investigate the traffic infraction that initially caused the stop, so long as (1) the facts that emerge during the police officer's investigation of the original offense create reasonable suspicion that additional criminal activity warranting additional present investigation is afoot, (2) the length of the entire detention is reasonable in light of the suspicious facts, and (3) the scope of the additional investigation is reasonable in light of the suspicious facts, meaning that it is reasonable to believe that each crime investigated, if established, would likely explain the suspicious facts that gave rise to the reasonable suspicion of criminal activity.

*Pack*, 612 F.3d at 358.

Here, during Blount's initial investigation of the window tint offense, facts emerged that created a reasonable suspicion that Defendant was committing a criminal act. As Blount pulled over the Cadillac, he noticed Defendant making "furtive movements" in the passenger seat. *See United States v. Grant*, 349 F.3d 192, 198 (5th Cir. 2003) ("furtive movements in the car" and "fumbling around in the passenger seat" added to officer's reasonable suspicion of criminal activity). When Blount first approached the vehicle, and during his investigation of the window tint, Defendant slumped forward in his seat, put his hands in his pockets or toward the front of his seat, and continually disobeyed Blount's directions to sit up straight and keep his hands in plain view. Blount

---

[4] The Court notes that it does not appear that Blount's investigation of the initial stop ever ended because neither the driver nor Defendant had a valid driver's license. However, the parties do not address this issue and focus upon Blount's reasonable suspicion.

8

had to tell Defendant to sit up and keep his hands in plain view several times. Blount also observed a bulge at the front of Defendant's pants, which Blount thought might be an attempt to conceal contraband. Blount also observed extreme nervousness on the part of Defendant, which appeared to be increasing the longer Defendant spoke with Blount. Defendant was breathing rapidly, his hands were shaking, and the carotid artery was bulging in his neck. *See Pack*, 612 F.3d at 345 (defendant's extreme nervousness in the form of breathing heavily, hands shaking, and carotid artery visibly pulsing, contributed to officer's reasonable suspicion).

After asking Defendant to step out of the vehicle, due to the behavior described above, Blount again observed the bulge in the crotch area of Defendant's pants. While attempting to explain to Defendant that neither Defendant nor the driver had a valid driver's license, Blount felt that Defendant was attempting to stand in a manner that would hide the bulge in his pants from Blount's view. This led Blount to believe that searching Defendant's person was appropriate. Therefore, based upon the totality of these circumstances, the Court holds that it was reasonable for Blount to suspect that Defendant was engaging in criminal activity warranting further investigation.

The Court also holds that the length of the detention was reasonable in light of the suspicious facts that Blount observed. "The police must diligently pursue a means of investigation that is likely to confirm or dispel their suspicions quickly." *Id*. at 361 (citing *U.S. v. Sharpe*, 470 U.S. 675, 685 (1985)). First, it is not clear to the Court that the initial detention had ended as neither Defendant nor the driver could legally operate the vehicle. Therefore, the detention was extended as Blount attempted to determine if either the driver or Defendant could legally drive the Cadillac. Second, Blount's suspicions centered on whether Defendant was hiding contraband on his person or under the passenger seat. A physical pat-down search of Defendant's person quickly confirmed Blount's

9

suspicions as he discovered a handgun and bag of narcotics. Even assuming that the reason for the initial stop had concluded, the short delay to perform a physical search of Defendant was reasonable, and did not render the length of the entire detention unreasonable.

Finally, the scope of the investigation that Blount conducted during the detention was reasonable in light of the violations and suspicious facts he observed. The Court is of the opinion that it is reasonable for an officer confronted with the behavior and conduct displayed by Defendant to detain a driver or passenger for a reasonable time to investigate the possibility they are carrying contraband. Blount testified to Defendant's extreme and increasing nervousness, Defendant's furtive movements, Defendant's repeated failure to sit up straight and keep his hands in plain view, and the bulge in the crotch area of Defendant's pants. Therefore, he asked for and was granted permission to search Defendant's person. Blount's decision to search Defendant for contraband was reasonable because concealment of contraband provided a reasonably likely explanation for the bulge in Defendant's pants and Defendant's behavior.

The facts Blount observed during his investigation of the window tint violation "created reasonable suspicion that additional criminal activity was afoot, and the length of the entire detention and the scope of his investigation were reasonable in light of the suspicious facts he had observed." *Id*. at 362. Therefore, the Court finds that Defendant's Fourth Amendment rights were not violated and the Court recommends that Defendant's motion to suppress evidence and statements be denied.

## RECOMMENDATION

The Court recommends that Defendant's Motion to Suppress Evidence and Statements (Dkt. #21) should be DENIED.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve

and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(c).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 14th day of September, 2010.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE